JOHN TABONE *v.* COMMISSIONER OF CORRECTION
(AC 23221)

Foti, Schaller and West, Js.

Argued June 4—officially released August 26, 2003

*David B. Bachman,* special public defender, for the appellant (petitioner).

*Judith Rossi,* executive assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Cara F. Eschuk,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FOTI, J. The petitioner, John Tabone, appeals from the habeas court's denial of his petition for a writ of habeas corpus. On appeal, the petitioner claims that

the court's refusal to hear testimony or other evidence concerning the facts and circumstances surrounding a statement he had given to the police prior to his arrest in the underlying criminal proceedings against him deprived him of his right to pursue his petition for a writ of habeas corpus, which alleged ineffective assistance of counsel with regard to the purported statement. We disagree and affirm the judgment of the habeas court.

On November 2, 2000, the petitioner pleaded guilty to sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2). On December 22, 2000, pursuant to a plea agreement, the court, *Damiani, J.*, sentenced the petitioner to a total effective term of ten years imprisonment followed by ten years special parole. On September 15, 2001, the petitioner filed a petition for a writ of habeas corpus in the judicial district of New Haven. The court, *Hon. Frank S. Meadow*, judge trial referee, held a hearing on the petition on April 25, 2002.

Before the habeas court, the petitioner alleged that he had received ineffective assistance of counsel. He claimed that for several months while he was in prison awaiting trial, the state had treated him with medication for his depression. He claimed that as a result of that treatment, he was not able to make appropriate decisions concerning his well-being and best interests regarding the charges, the impending trial and sentencing issues. He claimed that his attorney had failed to recognize the petitioner's situation and improperly advised him to plead guilty under the *Alford*[1] doctrine.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial." (Internal quotation marks omitted.) *State* v. *Daniels*, 248 Conn. 64, 66–67 n.2, 726 A.2d 520 (1999).

The petitioner further claimed that his attorney had advised him inadequately about possible constitutional violations by the police who had obtained his confession, the chances of success on a motion to suppress the confession and the effect that a successful motion to suppress might have on the outcome of the impending trial.

The habeas court found that it could not predict that the trial court would have suppressed the confession had it heard a motion to suppress. The habeas court also concluded that the petitioner's attorney provided effective assistance by using his professional judgment and experience to evaluate the chances of success at trial, and by advising the petitioner to accept a plea agreement that resulted in a much more favorable sentence than he would have faced had he gone to trial and been convicted. In a memorandum of decision filed June 10, 2002, the court denied the petition. On June 19, 2002, the court granted the petitioner's petition for certification to appeal, and the petitioner filed a timely appeal.

The sole issue presented on appeal is whether the habeas court improperly excluded evidence relating to an inculpatory statement given by the petitioner at the Waterbury police department.[2] The petitioner claims that the court abused its discretion in failing to allow him to introduce relevant evidence that may have shown that the trial court possibly could have granted his motion to suppress. In effect, he sought to have the habeas court decide the likely outcome of a hearing on the motion to suppress, which he had not pursued due to his guilty plea.

---

[2] The petitioner does not claim on appeal that he did not enter his pleas knowingly and voluntarily. His claim involves one of ineffective assistance of counsel in failing to be advised of the possible success of the motion to suppress and counsel's advice to accept the state's plea offer.

Generally, "[t]he conclusions reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wilson* v. *Office of Adult Probation*, 67 Conn. App. 142, 145, 786 A.2d 1120 (2001). "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." *White* v. *Commissioner of Correction*, 58 Conn. App. 169, 170, 752 A.2d 1159 (2000).

In the present case, the underlying claims involve the issue of whether the petitioner was deprived of his sixth amendment right to effective assistance of trial counsel. "For the petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different." Id., citing *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 445, 610 A.2d 598 (1992).

After reviewing the record, we conclude that the court had sufficient evidence before it to support its determination that the petitioner failed to prove that trial counsel's performance fell below an objective standard of reasonableness or that there was a reasonable probability that, but for counsel's allegedly deficient performance, the result would have been different.

It is the petitioner's claim that the challenged evidentiary rulings violated his statutory right to an effective evidentiary hearing pursuant to General Statutes § 52-470 (a).[3] The facts underlying that claim, as found by the habeas court, are as follows: "Jury selection in this case was started October 31, 2000. The pleas by [the petitioner] were on November 2, 2000. . . . Attorney [Richard M.] Berke . . . of the public defender's office originally had the file. [Dennis P.] Harrigan, also of the public defender's office, took over the file in August of 2000. A motion to suppress the statement of [the petitioner] to the Waterbury police was filed by Berke May 18, 2000.

"Harrigan testified he did not talk with the police about the statement because the Waterbury police typically would not answer questions if asked until the motion to suppress was heard. Harrigan testified that according to the affidavits, [the petitioner] was not under arrest at the time he gave the statement. . . . [The petitioner] told Harrigan [that] although he originally went into the police department, he was not allowed to leave. Harrigan testified [that] he did not undertake any sort of investigation about whether [the petitioner] was not free to leave the police department. Harrigan, however, testified [that] he [had] made adequate preparation to pursue the motion to suppress, which is customarily made after the jury is selected. The statement was accompanied by a waiver of rights form signed by [the petitioner]. [The petitioner] admitted he signed the form, but claimed he did not sign the waiver until after the statement. [The petitioner] claimed the statement was obtained by threats of bodily harm if he did not sign it.

_____

[3] General Statutes § 52-470 (a) provides: "The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require."

"Harrigan discussed with Berke a mental disease or defect defense, which Berke discussed with [the petitioner]. Harrigan discussed with [the petitioner] the issue of the mental disease or defect defense and that it was not going to be raised as a defense. Harrigan investigated the mental disease defense with a doctor and decided nothing could be done with it and that it was not a viable defense. A motion for a speedy trial had been filed by [the petitioner] pro se some time earlier, which was never withdrawn. Prior to jury selection on November 1, 2000, Judge Damiani discussed during pretrial a sentence of ten years and ten years probation with special conditions. The offer had been rejected by [the petitioner] while being represented by Berke. Once an offer to plead is rejected, it generally is increased by the judge after the case is started. Harrigan felt he was successful to be able to get the original offer back during jury selection."

The habeas court reviewed the statement that was contained in the petitioner's competency report.[4] The petitioner and Harrigan testified as to what each had told the other. Further, Harrigan testified as to why he advised the petitioner to accept the offer and why the petitioner decided to enter the plea. The petitioner acknowledged that Harrigan had advised him that the suppression hearing would be a credibility contest, that the state intended to call the victim to testify if the case went to trial and that it would be hard to prevail at trial with or without the statement. The petitioner also acknowledged that Harrigan had told him that to proceed to the suppression hearing would necessarily mean forgoing the favorable plea offer and that even if he prevailed on the suppression motion, it would be difficult to win at trial. Further, the petitioner under-

---

[4] Harrigan had requested the competency report pursuant to an examination under General Statutes § 54-56d before entry of the guilty pleas.

stood that a trial would have exposed him to a significant risk of a substantial prison sentence.

The petitioner argues in his principal brief that the habeas court "could not possibly fairly assess whether [he] received effective assistance of counsel without appropriate information regarding the circumstances under which [he] gave his alleged 'voluntary' statement." That court's ruling to exclude evidence concerning the circumstances surrounding the statement, he argues, "undercuts the very purpose of the habeas hearing." We do not agree.

The petitioner's decision to plead guilty was his decision, made after his counsel advised him of the difficulty of prevailing on the motion to suppress, the strength of the state's case and the likelihood of conviction even if the trial court had suppressed the statement. His attorney's evaluation of the options and the consequences of each led to a review of the plea offer and the petitioner's ultimate choice to accept the offer. The petitioner accepted the state's offer rather than taking a chance that he might face a greater sentence following a trial.

We conclude that the habeas court did not abuse its discretion in its evidentiary rulings concerning the circumstances surrounding the taking of the petitioner's statement.

The judgment is affirmed.

In this opinion the other judges concurred.