ANTHONY SMALL *v.* COMMISSIONER OF CORRECTION
(AC 26245)

McLachlan, Harper and Dupont, Js.

Submitted on briefs March 31—officially released November 14, 2006

*Joseph Visone*, special public defender, filed a brief for the appellant (petitioner).

*Susann E. Gill*, senior assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, Anthony Small, appeals following the habeas court's denial of his petition for certification to appeal from the judgment dismissing his petition for a writ of habeas corpus. The dispositive

issue to be determined is whether either his trial or appellate counsel rendered ineffective assistance to him arising out of a jury instruction that did not contain the language of General Statutes § 53a-49 (a) (2).[1] We agree that his petition for certification to appeal should have been granted as to that issue but conclude that neither counsel rendered ineffective assistance, and, therefore, we affirm the habeas court's judgment on that issue.[2]

A certifiable issue exists, warranting an appeal to this court, if a petitioner can show that the habeas court abused its discretion. To do so, a petitioner must demonstrate that the resolution of the underlying claim involves issues that are debatable among jurists of reason, that a court could resolve the issues differently or that the questions involved deserve encouragement to proceed further. *Bowden* v. *Commissioner of Correction*, 93 Conn. App. 333, 338, 888 A.2d 1131, cert. denied, 277 Conn. 924, 895 A.2d 796 (2006).

The questions of whether trial counsel should have sought an instruction using the language of § 53a-49 (a) (2) or should have excepted to a charge that did not contain that language, or whether appellate counsel, on direct appeal, should have claimed that the lack of such an instruction denied the petitioner a fair trial are questions that are debatable among jurists of reason. No appellate case has decided those precise issues, and the issues are obviously debatable because the appellate panel in this case does not agree on the answers. The questions, therefore, of whether either counsel provided effective assistance to the petitioner deserved

---

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] The facts pertinent to the petitioner's trial are set forth fully in *State* v. *Small*, 242 Conn. 93, 700 A.2d 617 (1991), and need not be repeated.

encouragement to proceed further, and the petition for certification should have been granted so that these questions could be answered.[3] See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

Because certifiable issues, as stated, exist, we next discuss the merits of the petitioner's claim of ineffective assistance of counsel as to them. "The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Nieves* v. *Commissioner of Correction*, 92 Conn. App. 534, 536, 885 A.2d 1268 (2005), cert. denied, 277 Conn. 903, 891 A.2d 2 (2006).

---

[3] The petitioner also argues that his trial counsel was ineffective for failing to cross-examine two of the state's witnesses adequately or to request a jury instruction on prior inconsistent statements. We do not consider the latter claim because the habeas court did not address it, and the petitioner did not seek an articulation pursuant to Practice Book § 66-5. See *Bowden* v. *Commissioner of Correction*, supra, 93 Conn. App. 342. Neither that claim, nor that of inadequate cross-examination, comprises an abuse of discretion for failure to grant a petition for certification to appeal. The habeas court correctly concluded that trial counsel fully cross-examined the witnesses, a conclusion with which we agree. The claim of ineffective assistance of counsel as to these claims is not supported by the record. The appeal is dismissed as to these claims.

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"Turning to the prejudice component of the *Strickland* test, [i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citation omitted; internal quotation marks omitted.) *Bova* v. *Commissioner of Correction*, 95 Conn. App. 129, 135, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006).

The same two part analysis also applies to the petitioner's claim that his appellate counsel rendered ineffective assistance. "The first part of the *Strickland* analysis requires the petitioner to establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized

the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . .

"To satisfy the prejudice prong, a petitioner must . . . establish that, because of the failure of his appellate counsel to raise a [particular] claim, there is a reasonable probability that he remains burdened by an unreliable determination of his guilt." (Citations omitted; internal quotation marks omitted.) *Vivo* v. *Commissioner of Correction*, 90 Conn. App. 167, 171–73, 876 A.2d 1216, cert. denied, 275 Conn. 925, 883 A.2d 1253 (2005).

The petitioner's habeas corpus petition, filed February 2, 2000, raised seven errors of the trial court, thirteen of trial counsel and five of appellate counsel, none of which involved the basic issue of this appeal for which the petitioner deems a new trial for felony murder is necessary. A second amended petition, filed March 31, 2000, for the first time, alleged ineffective assistance of both counsel for their failures to address this issue.[4] Not even the petitioner, therefore, originally viewed the issue as of paramount importance.

No expert witness at the habeas trial testified for the petitioner that either counsel's performance was deficient. An expert witness is not essential to show that an attorney's performance was so deficient that it fell below the standard of reasonably effective assistance, but in many cases, expert testimony is useful. The habeas court, in this case, without any expert testimony that either counsel was ineffective, ruled that neither of them rendered ineffective assistance to the petitioner.

The petitioner was originally charged with one count of capital felony in violation of General Statutes (Rev. to 1989) § 53a-54b (8), two counts of felony murder in

---

[4] The habeas court granted the motion of the petitioner to amend his amended petition.

violation of General Statutes § 53a-54c, one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48,[5] and one count of kidnapping in the second degree in violation of General Statutes § 53a-94. He was found guilty on all counts, after a jury trial, except for the count of kidnapping. On direct appeal, the conviction of capital felony was vacated, and the case was remanded for resentencing on the felony murder conviction. *State* v. *Small*, 242 Conn. 93, 116, 700 A.2d 617 (1997). On remand, he was sentenced to a total effective term of forty-five years imprisonment. Thus, after direct appeal, the petitioner avoided a sentence of life imprisonment without the possibility of release on the count of capital felony and, after trial, avoided a sentence for the class B felony of kidnapping in the second degree "for which three years of the sentence imposed may not be suspended or reduced by the court." General Statutes § 53a-94 (b).

The petitioner claims that he was charged with felony murder on the basis of the predicate crime of attempt to commit robbery in the first degree and that the jury should have been instructed on attempt as provided in § 53a-49 (a) (2). The flaw in the petitioner's statement of the issue is that he was not charged with the predicate crime of attempt to commit robbery pursuant to § 53a-49 (a) (2). The petitioner could have been charged properly with both felony murder; General Statutes § 53a-54c; and attempt to commit the crime of robbery; General Statutes § 53a-49 (a) (2); see *State* v. *Gayle*, 64 Conn. App. 596, 781 A.2d 383, cert. denied, 258 Conn. 920, 782 A.2d 1248 (2001); but the petitioner was *not* charged with both crimes.[6]

---

[5] No claim is made in this appeal that either counsel was ineffective in their representation of the petitioner as to his conviction of the charge of conspiracy to commit robbery in the first degree.

[6] In the event that the petitioner was charged and found guilty of both crimes, he could have been sentenced separately for both crimes. See *State*

The court began its substantive instructions by defining robbery in the first degree, as set forth in § 53a-134 (a) (2).[7] It then instructed the jury with respect to the essential elements of felony murder as follows: "[A] person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit . . . robbery in the first degree and in the course of and in the furtherance of such crime or flight therefrom, he or another participant, if any, causes the death of [a] person other than one of the participants . . . .

"In order for you to find the accused guilty of felony murder, the state must prove beyond a reasonable doubt each of these following elements: that the accused, acting alone or with one or more other persons, committed or attempted to commit the crime of robbery in the first degree . . . . Two, that the defendant or another participant in the crime of robbery in the first degree, [or] the attempt to commit the same, caused the death of another person. Three, that the defendant or another participant caused the death while in the course of and in the furtherance of the commission or attempted commission of . . . robbery in the first degree, or in the immediate flight therefrom, [a]nd that the victim[s] . . . were not participants in the crime. . . .

v. *Fernandez*, 27 Conn. App. 73, 92–96, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992).

[7] As fully discussed by the court in its instructions, General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ." General Statutes § 53a-133 further provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

"You understand that in order to prove the felony murder, you have to be satisfied beyond a reasonable doubt that . . . another [person], and this defendant, acting alone or with one or more persons, committed or attempted to commit an attempted robbery in the first degree. Two, that the accused or another participant in the crime of attempted robbery in the first degree caused the death of another person. Three, that the defendant or another participant caused the death while in the course of and in the furtherance of the commission of the attempted commission of the crime of robbery or the immediate flight therefrom. And four, that the victims . . . were not participants in the crime."

The petitioner claims that the instructions, as quoted, misled the jury because they failed to define properly an element of felony murder, namely, "attempt" to commit robbery, as outlined in § 53a-49 (a) (2), and that both his trial and appellate counsel provided ineffective representation for their failure to pursue that claimed impropriety. The court's instruction used the words of § 53a-54c, but not those of § 53a-49 (a) (2). The petitioner attempts to analogize the present case to cases in which the trial court failed to instruct the jury on an essential element of an offense, and this court on appeal concluded that it was reasonably possible that the jury was misled. The respondent, the commissioner of correction, claims that the court instructed the jury on each and every element of the offense of felony murder. The respondent claims that because the petitioner was not charged with attempt to commit robbery, pursuant to § 53a-49 (a) (2), the court was not bound to charge the jury on that statute's definition of attempt, and the jury was free to apply the ordinary meaning to the word "attempt."

The petitioner's trial counsel admittedly did not seek an instruction using the words of § 53a-49 (a) (2), nor

did he take exception to the instruction that lacked these words. Trial counsel was obviously aware that the petitioner was charged with § 53a-54c, a crime that does not specify that the attempted robbery be in any particular degree, as the same statute does specify in the case of other crimes such as sexual assaults or escape.[8] Because the petitioner was not charged with the separate crime of § 53a-49 (a) (2), counsel could not know if an element of the crime of felony murder that the state needed to prove was an attempt to commit robbery in the first, second or third degree, as described in General Statutes §§ 53a-133, 53a-134, 53a-135 and 53a-136. He was also aware that the definitional section of General Statutes § 53a-3 had no definition of the word "attempt." Given the statutory framework, it was reasonable of him not to seek an instruction containing the words of § 53a-49 (a) (2). Furthermore, the defense of the petitioner at trial was "mere presence" at the scene of the murders. The trial strategy, therefore, was to convince the jury that the petitioner was not involved in any attempt to commit a robbery and not involved in any robbery at all. Any specific instruction as to attempt to commit a robbery would dilute that strategy.

---

[8] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

Trial counsel could have concluded reasonably not to seek any instruction as to that statute. The petitioner has failed to show that trial counsel provided ineffective assistance.

Appellate counsel raised six issues on appeal, the primary one being a successful claim that the capital felony murder charge should be dismissed.[9] The number of issues that can be raised in an appellate brief or orally argued is not limitless. Appellate counsel knew of the petitioner's trial strategy and was familiar with the crimes with which he was charged and convicted. In view of the more viable claims that could be pursued on direct appeal, appellate counsel did not pursue the claim relating to the jury instruction that the petitioner now asserts. She did not provide ineffective assistance to the petitioner. On the contrary, she was successful in vacating the conviction that would have imprisoned him for life and also raised other claims that might, if successful, have given him a new trial.

The burden a "petitioner must sustain for a favorable outcome on his ineffective assistance of [appellate] counsel claim is a higher one than he would have had to sustain had the actual merits of the same issue been raised on direct appeal." *Valeriano* v. *Bronson,* 209 Conn. 75, 87, 546 A.2d 1380 (1988). It is possible to omit a dispositive issue on appeal and nevertheless to have provided adequate counsel under the sixth amendment to the United States constitution. Id.

We conclude that neither counsel rendered ineffective assistance to the petitioner. We also conclude, on

---

[9] Other claims appellate counsel raised were that (1) the trial court should have charged on an affirmative defense to felony murder, (2) evidence of the petitioner's prior felony convictions should not have been presented to the jury, (3) his motion for a new trial should have been granted because a juror was a neighbor of the petitioner, (4) the court's instruction on reasonable doubt shifted the burden of proof to the petitioner and (5) the petitioner's conviction required a coconspirator's conviction to be upheld on appeal before the petitioner's conviction could be affirmed.

the basis of case law and the precepts of *Strickland*, that the conviction of the petitioner on two counts of felony murder was reliable.

In *State* v. *Sinclair*, 197 Conn. 574, 580, 500 A.2d 539 (1985), the defendant challenged his conviction of burglary in the second degree under General Statutes § 53a-102 (a) on the basis that the trial court failed to include the statutory definition of "intent" in General Statutes § 53a-3 (11) during instructions to the jury on the elements of the offense. Reviewing the charge in its entirety, our Supreme Court concluded that the jury had been instructed adequately on the element of intent. *State* v. *Sinclair*, supra, 581. According to the court, "[t]he word intent was used in its ordinary sense"; id.; in the trial court's instructions, despite the fact that the word was defined by statute.

In the present case, the word "attempt" is not defined in either the definitional section of our Penal Code, § 53a-3, nor is it defined in § 53a-54c, the statute defining felony murder, with which the petitioner was charged. We therefore conclude that even if the language of § 53a-49 (a) (2) were relevant, the jury could have found that the state proved the element of "attempt" of § 53a-54c by using its ordinary definition. Attempt is a much used English word with a common definition. To attempt, according to Webster's, is "to make an effort to do, get, have, etc." Webster's New World College Dictionary (4th Ed. 2002). Having reviewed the charge in its entirety with the principles of *Sinclair* in mind, we conclude that the word "attempt" was used in its ordinary sense, in a manner which clearly conveyed what had to be proved by the state to justify a conviction.

Cases other than *Sinclair* also indicate that statutory definitions need not always be provided to a jury. See *State* v. *Sargent*, 87 Conn. App. 24, 42–44, 864 A.2d 20,

cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005); see also *State* v. *Maresca*, 173 Conn. 450, 460–61, 377 A.2d 1330 (1977). In the present case, no statutory definition exists, except if a statute, under which the petitioner was not charged, is consulted.

Here, the petitioner was not charged with a violation of § 53a-49 (a) (2), making it all the more certain that the jury was not misled by the lack of the language of that statute and that the petitioner's conviction for felony murder was reliable. In short, the petitioner cannot cross-pollinate the crime of felony murder with the separate crime of criminal attempt as provided in § 53a-49 (a) (2).

To be successful on a habeas corpus petition, which is a collateral attack on a conviction, "a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal." (Internal quotation marks omitted.) *Lozada* v. *Warden*, 223 Conn. 834, 840, 613 A.2d 818 (1992). The task of showing that the conviction resulted from a breakdown in the adversary process, rendering a result unreliable is "herculean." Id., 843. The petitioner has failed in that task.

The appeal, as it relates to the petitioner's claim of ineffective assistance of counsel due to counsel's cross-examination of two witnesses and counsel's failure to request an instruction on prior inconsistent statements, is dismissed;[10] and the judgment dismissing the petition for writ of habeas corpus claiming ineffective assistance of trial and appellate counsel due to counsels' failure to take exception to the trial court's felony murder instruction is affirmed.

In this opinion McLACHLAN, J., concurred.

---

[10] See footnote 3 of this opinion.

HARPER, J., dissenting. The majority concludes that the habeas court abused its discretion in denying the petition for certification to appeal from the judgment dismissing the petition for a writ of habeas corpus but that the habeas court properly rejected the claims of ineffective assistance of counsel made by the petitioner, Anthony Small. I disagree with the majority's conclusion that the habeas court properly determined that both trial and appellate counsel rendered effective assistance. I therefore respectfully dissent.

As the majority discussed, the petitioner claims that, because he was charged with felony murder on the basis of the predicate crime of attempt to commit robbery in the first degree, the court should have instructed the jury on the definition of attempt. He argues that his trial counsel and his appellate counsel both rendered ineffective assistance because they failed to challenge the absence of such an instruction.

At the outset, the majority concludes that the petitioner's statement of the issue is flawed because he was not formally charged with the crime of attempt to commit robbery in violation of General Statutes §§ 53a-134 (a) (2) and 53a-49 (a) (2). The majority emphasizes that, although the state could have charged the petitioner both with felony murder and attempt to commit robbery in the first degree, it did not do so. Instead, the majority notes that the petitioner was charged with felony murder and conspiracy to commit robbery.

Notwithstanding the fact that the petitioner was not charged with a separate count of attempt to commit robbery in the first degree, the trial court instructed the jury that to convict the petitioner of felony murder, "the state must prove beyond a reasonable doubt each of these following elements: that the accused, acting alone or with one or more other persons, committed or attempted to commit the crime of robbery in the

first degree . . . . Two, that the defendant or another participant in the crime of robbery in the first degree, [or] the attempt to commit the same, caused the death of another person. Three, that the defendant or another participant caused the death while in the course of and in the furtherance of the commission or attempted commission of attempted robbery in the first degree, or in the immediate flight therefrom, [a]nd that the victim[s] . . . were not participants in the crime." The trial court, therefore, clearly instructed the jury that the counts of felony murder were based on either the predicate crime of robbery in the first degree or the predicate crime of attempt to commit robbery in the first degree. The state prosecuted these charges solely under the theory that the petitioner committed felony murder during the commission of the crime of attempt to commit robbery in the first degree.

Whether trial or appellate counsel was ineffective for failing to challenge the lack of an instruction on attempt in the court's charge depends, in the first instance, on the legal principles that apply to jury instructions. "[A]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. . . . It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . [T]he failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citation omitted; internal quotation marks omitted.) *State* v. *Barksdale*, 79 Conn. App. 126, 131, 829 A.2d 911 (2003).

"The standard of review for an improper instruction on an element of an offense is whether it is reasonably possible that the jury was misled. . . . In determining

whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . The charge must be considered from the standpoint of its effect on the jury in guiding [it] to a proper verdict." (Internal quotation marks omitted.) *State* v. *Cooke*, 89 Conn. App. 530, 539–40, 874 A.2d 805, cert. denied, 275 Conn. 911, 882 A.2d 677 (2005).

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), quoting *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); see also *State* v. *Velasco*, 253 Conn. 210, 235, 751 A.2d 800 (2000).

"In order to obtain a conviction for felony murder the state must prove, beyond a reasonable doubt, all the elements of the statutorily designated underlying felony, and in addition, that a death was caused in the course of and in furtherance of that felony." (Internal quotation marks omitted.) *State* v. *Cooke*, supra, 89 Conn. App. 535. I believe an instruction on attempt was required because it was an essential element of the

underlying crime, namely, attempt to commit robbery in the first degree. See e.g., 2 D. Wright & D. Havanich, Connecticut Jury Instructions (2d Ed. 1975) § 694, p. 1086 (providing example of felony murder instruction on basis of attempt to commit robbery and including definition of attempt from § 53a-49). In this case, the trial court instructed the jury on the elements of robbery in the first degree and the elements of felony murder, but it never explained the concept of attempt as an element of the crime of attempt to commit robbery, nor did it provide the jury with the definition of attempt as provided in § 53a-49 (a) (2).

It is undisputed that the theory supporting the felony murder charges was that the deaths of the victims in this case occurred as a result of an attempted robbery by the petitioner and his coconspirators. Accordingly, to sustain a conviction for felony murder, the state had to prove that an attempted robbery had occurred. Absent *any* explanation regarding the legal definition of attempt, I fail to see how the trial court's instructions could have guided the jury to a proper verdict.[1]

Respectfully, I disagree with the majority's conclusion that the court did not need to instruct the jury on the definition of attempt because the term was used in its "ordinary definition." As compared to the statutory definition of attempt provided in § 53a-49 (a) (2), the most relevant dictionary definitions of attempt are "to make an effort at; try; undertake" or "an effort made

---

[1] The absence of an instruction on attempt likely was compounded further by the court's misplaced reference to attempt in its instructions on the charge of conspiracy to commit robbery. The court instructed the jury: "To constitute the crime of conspiracy the state must prove the following elements beyond a reasonable doubt: that there was an agreement between the [petitioner and his coconspirators], any two or more of them to engage in conduct constituting the crime of *attempted* robbery in the first degree, that there was an overt act in [furtherance] of the subject of that agreement and there was an intent on the part of the accused . . . that conduct constituting the crime be performed." (Emphasis added.)

to accomplish something." Random House Webster's Unabridged Dictionary (2d Ed. 2001). These dictionary definitions are far less specific than the statutory definition provided in § 53a-49 (a), which provides in relevant part that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." The technical nature of this definition is underscored by the fact that "substantial step" is further defined by § 53a-49 (b). Consequently, I believe that the court should have instructed the jury on the relevant statutory definition. Compare *State* v. *Spillane*, 255 Conn. 746, 755–56, 770 A.2d 898 (2001) (dictionary definition of "appropriate" not as specific as statutory definition). I would conclude, therefore, that as a result of the trial court's failure to instruct the jury on the definition of attempt, it is reasonably possible that the jury was misled as to the essential elements of felony murder.

Moreover, I do not believe that the court's improper omission of an instruction on attempt may be described as harmless in this case. As I already have noted, for an improper instruction to be harmless, the omitted element must be *both* uncontested and supported by overwhelming evidence. *State* v. *Montgomery*, supra, 254 Conn. 738; *State* v. *Velasco*, supra, 253 Conn. 235. Regardless of whether there was overwhelming evidence that the petitioner and his associates attempted to commit robbery in the first degree, the issue of attempt clearly was contested at trial. Although the majority focuses on the petitioner's asserted defense, which was that he merely was present at the scene of the crime, defense counsel repeatedly stated during closing argument that the events in question did not

constitute an attempted robbery.[2] I am unable to conclude, therefore, that the omission of an instruction on the element of attempt was harmless.

Under these circumstances, I do not agree with the majority that the habeas court properly determined that trial and appellate counsel rendered effective assistance of counsel.[3] At the habeas proceeding, the petitioner's

[2] At various times during closing argument, defense counsel made the following comments: "I submit again that this is another instance of [one conspirator] blame shifting to make it appear that a robbery was going on here when, in fact, it wasn't . . . . [Another conspirator is] yelling at the door, 'I want my stuff, I want my stuff,' like he had been doing for the last [twenty-three] hours. He's shooting into the apartment, nobody else shot or pointed a gun at anybody, leaving us with the quintessential obvious question, was this a robbery attempt or the act of one crazed and angry madman? . . . Because it sure doesn't look like a robbery is being attempted here based on the circumstances as we know them to be. . . . The incident doesn't look like a robbery attempt because it wasn't. It was a spontaneous double homicide committed by a frightened drug dealer who was afraid that he was going to be hurt, he was mad that he lost his drugs, and he lost his cool when he went up to that door and killed two people. But it wasn't a robbery attempt; again, it was a spontaneous—it was a double homicide, granted, but it was the act of a frightened lunatic."

[3] The majority notes that, in the absence of expert witness testimony at the habeas proceeding, the habeas court relied on its own expertise to conclude that neither trial nor appellate counsel was ineffective. My review of the habeas court's memorandum of decision, however, indicates that its analysis of this claim is wholly unsupported by the case on which it relied.

At the habeas proceeding, and again on appeal to this court, the respondent, the commissioner of correction, argued that because the trial court had instructed the jury on the definition of an overt act as part of its charge on conspiracy to commit robbery, the jury, in finding the petitioner guilty of conspiracy, necessarily found facts that were the functional equivalent of those required to find the petitioner guilty of attempt to commit robbery. In support of this argument, the respondent relied on a functional equivalency test proposed by Justice Scalia in a concurrence in *Carella* v. *California*, 491 U.S. 263, 271, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989) (Scalia, J., concurring). Such a test, however, never has been adopted by a majority of the United States Supreme Court or any appellate court of this state. Furthermore, upon reviewing the rationale supporting Justice Scalia's functional equivalency test, I would conclude that it is inapplicable to the facts of this case.

Notwithstanding the lack of support for such a test, the habeas court's analysis of this issue rests solely on *Carella*. In its memorandum of decision,

trial counsel acknowledged that the court instructed the jury that the basis for the felony murder charges was attempt to commit robbery. He testified, nonetheless, that he did not object to the court's failure to instruct the jury on the definition of attempt because the petitioner was not charged with attempt to commit robbery. The petitioner's appellate counsel also agreed that, despite the fact that the court referenced attempt to commit robbery several times, it did not instruct the jury on the definition of attempt. She similarly testified that the petitioner was not charged with attempt to commit robbery.

Although there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, I am persuaded that trial and appellate counsel's failure to challenge the absence of an instruction on attempt in this case may not be considered sound trial strategy. See *Bova* v. *Commissioner of Correction*, 95 Conn. App. 129, 135, 894 A.2d 1067 (2006). More specifically, I would conclude that, in light of the evidence presented at trial and trial counsel's comments during closing argument that challenged whether an attempted robbery had occurred, it was objectively unreasonable for trial counsel not to object to the court's instruction. Furthermore, even though I acknowledge the sound policy of appellate counsel to limit the issues presented on appeal to those that are most persuasive, I would conclude that the court's failure to instruct the jury on the definition of attempt was such an issue.

the habeas court concluded that the petitioner had failed to prove that the omission of an instruction on attempt had prejudiced the defense because "[t]he charge was otherwise in order and the jury was told in the portions dealing with accessories and conspiracy that it must find that the petitioner acted with the mental state required for the commission of the crime. . . . [T]his jury found facts so closely related to those required to find an attempt that the failure to charge on attempt was harmless." I find this analysis unpersuasive, and I am perplexed by the fact that the majority is not troubled by the habeas court's reliance on *Carella*.

Turning to the second part of the *Strickland* test, I would conclude that the failure of trial and appellate counsel to challenge the court's omission of an instruction defining attempt prejudiced the petitioner. As I already have discussed, to convict the petitioner of felony murder, the state was required to prove that he attempted to commit robbery in the first degree. Attempt was an essential element of the crime, and the court's failure to provide the jury with the appropriate definition was improper. Because I would conclude that the improper instruction was not harmless, trial and appellate counsel's failure to challenge the instruction necessarily was prejudicial to the petitioner. I would conclude, therefore, that trial and appellate counsel rendered ineffective assistance by not challenging the court's failure to instruct the jury on the definition of attempt and that the habeas court improperly dismissed the petition for a writ of habeas corpus.

I respectfully dissent.